UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL ROBERTSON

CIVIL ACTION

VERSUS

NO. 16-341-JJB-RLB

SID GAUTREAUX ET AL

## RULING

This matter is before the Court on a Motion to Dismiss for Failure to State a Claim (Doc. 13) brought by the Defendants.[1] The Plaintiff, Michael Robertson ("Robertson"), filed an Opposition (Doc. 23), and the Defendants filed a Reply (Doc. 24). Oral argument is unnecessary. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part.**

## I.   BACKGROUND[2]

This case arises from an assault and battery committed by an inmate at East Baton Rouge Parish Prison ("EBRPP"), Percy Cage ("Cage"), against the Plaintiff, Robertson, a pretrial detainee awaiting to be tried for first degree murder in the 19th Judicial District Court.[3]

On the morning of May 24, 2015, Robertson was watching television with other inmates in the day room of Tier J2. After Robertson had been watching television for some time, Cage came into the day room. He started a verbal altercation with Robertson over control of the television. During the argument, Robertson stood up. Without provocation or warning, Cage struck Robertson in the face with a cast or a brace that he had been wearing because of an injury.

---

[1] The following individuals are Defendants in this suit: Sid J. Gautreaux, Sherriff of East Baton Rouge Parish; Dennis Grimes, Warden of East Baton Rouge Parish Prison ("EBRPP"); Robert Clement, Deputy Warden of EBRPP; Johnny Scott, Chief of Security of EBRPP; Leonard Harris, Deputy Sheriff; Terall Locket, Deputy Sheriff; Deputy Griffin; Deputy Does 1-4. They have been sued in both their personal and official capacities.
[2] The following factual allegations are taken from the Complaint (Doc. 1) and are treated as true for purposes of this Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[3] Pl.'s Opp. 1, Doc. 23.

1

Prior to this altercation, Cage had initiated numerous instances of violence both inside of prison and outside of prison. For example, Cage had once tried to fight a guard in booking who was much bigger than Cage. Additionally, he had been sent to lockdown for fighting with other inmates. Right before he assaulted Robertson, he was released from lockdown and assigned back to the general population tier, Tier J2.

Robertson claims that before the incident, Cage was telling other inmates he had issues with Robertson based on Robertson's underlying criminal case. Robertson claims that "Defendants knew or should have known that Percy Cage had expressed animosity toward Michael Robertson before the incident on May 24, 2015."[4]

At the time of the assault, Defendants Locket, Harris, and Griffin were supposed to be supervising Tier J2. Robertson claims that they were "nowhere near the day room" when he was assaulted.[5]

Plaintiff alleges that the Defendants failed to protect him from Cage and that the assault has left him with many injuries including the partial loss of his vision. Defendants bring a Motion to Dismiss for failure to state a claim.

## II.   STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if the plaintiff fails to "state a claim upon which relief can be granted."[6] When deciding a motion to dismiss for failure to state a claim under 12(b)(6), a court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[7] To survive a 12(b)(6)

---

[4] Compl. ¶ 21, Doc. 1.
[5] *Id.* at ¶ 35.
[6] Fed. R. Civ. P. 12(b)(6).
[7] *Doe v. United States*, 831 F.3d 309, 314 (5th Cir. 2016) (citation omitted).

motion, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.[8] A claim has facial plausibility when the complaint's factual content allows the court to draw the reasonable inference that the defendant is liable.[9] While a court must accept all factual allegations as true, it is not bound to accept as true legal conclusions couched as factual allegations.[10]

## III.   DISCUSSION

Plaintiff brings a variety of individual and official capacity claims against the Defendants. He argues that the Defendants failed to protect him from Cage and had policies in place which allowed known aggressors to attack other inmates. In response, Defendants argue that the Plaintiff's claims should be dismissed in their entirety for four reasons. First, they argue that all claims against the Defendants in their individual capacities must be dismissed based on qualified immunity. Second, Defendants argue that Plaintiff fails to allege sufficient facts to state a failure to supervise or train claim. Third, they argue that claims against certain Defendants in their official capacities must be dismissed because those specific Defendants are not final policymakers. Finally, they argue that Plaintiff fails to allege sufficient facts to state an official capacity claim. The Court addresses each of these arguments in turn.

### A.   Individual Capacity Claims (Failure to Protect)

The Plaintiff alleges that Defendants Gautreaux, Grimes, Clement, Harris, Scott, and Deputy John Doe Defendants 1-4 are individually liable to him because they released Cage, a dangerous prisoner, to the general population tier.[11] Plaintiff alleges that Defendants Locket, Harris, and Griffin are individually liable to him because they were on duty the day he was

---

[8] *Id.*
[9] *Ashcroft,* 556 U.S. at 678.
[10] *Id.*
[11] Compl. ¶ 16, Doc. 1.

attacked, and they did not prevent the attack from occurring.[12] Defendants argue that all of these individual claims must be dismissed because Defendants are entitled to qualified immunity.

As an initial matter, the Court sets out the heightened pleading standard that a plaintiff must meet when a defendant raises the qualified immunity defense in a motion to dismiss.[13] Qualified immunity is an affirmative defense to a suit brought under 42 U.S.C. § 1983.[14] The defense "protects government officials [sued] in their personal capacity, while performing discretionary functions, not only from suit, but from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[15] Officials who act reasonably but who mistakenly violate a plaintiff's constitutional rights are entitled to qualified immunity.[16] The defense protects all government employees except the "plainly incompetent or those who knowingly violate the law."[17] The protection "afforded by qualified immunity applies to the lawsuit itself, and not merely to liability, and thus the issue should be resolved as early as possible."[18]

Once a defendant raises the qualified immunity defense in a motion to dismiss, the plaintiff has the burden of proving its inapplicability.[19] To satisfy the burden, a plaintiff must meet a two-pronged test.[20] First, a plaintiff must allege a violation of a constitutional right.[21] Second, a plaintiff must allege enough facts to show that a defendant's actions were objectively unreasonable in light

---

[12] *Id.* at ¶ 35.
[13] *Floyd v. City of Kenner, Louisiana*, 351 Fed. App'x 890, 893 n. 2 (5th Cir. 2009) ("We emphasize that this heightened pleading standard applies only to claims against public officials in their individual capacities.").
[14] *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).
[15] *Carter v. Diamond URS Huntsville, LLC*, Civil Action No. 14-2776, 2015 WL 3629793, at *9 (S.D. Tex. Jun. 10, 2015) (citing *Harlow*, 457 U.S. at 818).
[16] *Id.* (citation omitted).
[17] *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997).
[18] *Morgan v. Hubert*, 335 Fed. App'x 466, 472 (5th Cir. 2009).
[19] *Floyd,* 351 Fed. App'x at 893.
[20] *Id.*
[21] *Id.*

of clearly established law at the time of the conduct in question.[22] A court may use its discretion when deciding which prong of the qualified immunity analysis to address first.[23] This Court begins with the first prong.

### 1.     The First Prong: The Plaintiff Fails to Allege Violations of His Constitutional Rights.

Robertson's main constitutional claim is that Defendants failed to protect him from other inmates. The Court begins by determining whether to apply a subjective or an objective standard to Plaintiff's individual capacity claims. After determining which standard applies, the Court next addresses whether Plaintiff has alleged sufficient facts to show that the Defendants violated his constitutional rights.

The parties disagree as to whether, in order to make out a failure to protect claim against the Defendants in their individual capacities, the Plaintiff must meet an objective test or a subjective test. Their disagreement stems from the fact that Plaintiff was a pretrial detainee on the date of the assault. The Plaintiff argues that based on a recent Supreme Court case and a recent Ninth Circuit case, this Court must apply an objective standard to his failure to protect claims because pretrial detainees have greater constitutional rights than convicted inmates.[24]

The Supreme Court recently held that for purposes of an excessive force claim brought by a pretrial detainee rather than a convicted inmate, courts must apply an objective test.[25] "The question before us is whether, to prove an excessive force claim, a pretrial detainee must show that the officers were *subjectively* aware that their use of force was unreasonable, or only that the officers' use of that force was *objectively* unreasonable. We conclude that the latter standard is the

---

[22] *Id.* at 894.
[23] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).
[24] *See Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015); *Castro v. City of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).
[25] *Kingsley*, 135 S.Ct. at 2470.

correct one."[26] *Kingsley* based its holding on the fact that pretrial detainees and convicted inmates derive their constitutional rights from two different clauses. A pretrial detainee brings an excessive force claim under the Fourteenth Amendment's Due Process Clause while a convicted inmate brings his excessive force claim under the Eighth Amendment's Cruel and Unusual Punishment Clause. "The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically…Thus, there is no need here, as there might be in an Eighth Amendment case, to determine when punishment is unconstitutional."[27] Accordingly, the Court found that the subjective intent of an officer (in other words, whether he meant to punish the inmate) was irrelevant to the pretrial detainee's claim. The Ninth Circuit, in *Castro*, expanded the *Kingsley* case, and applied this new objective standard to pretrial detainees bringing failure to protect claims.[28] In doing so, the Ninth Circuit created a new four part test.[29]

The Defendants argue that the *Kingsley* decision, a case about excessive force claims, does not apply to the Plaintiff's claims. They urge this Court to follow the Fifth Circuit case, *Hare*, which held that regardless of whether an inmate is a pretrial detainee or a convicted inmate, the standard for holding a government official liable for failing to protect him from inmate violence is the same—the deliberate indifference standard.[30]

---

[26] *Id.* (emphasis in original).

[27] *Id.* at 2475.

[28] *Castro*, 833 F.3d at 1071.

[29] *Id.* ("Putting these principles together, the elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are: (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.").

[30] *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).

The Court agrees with the Defendants and declines to apply a new objective standard to failure to protect claims brought by pretrial detainees. Recently the Fifth Circuit reaffirmed the *Hare* holding in light of *Kingsley*.[31] Accordingly, this Court applies a deliberate indifference standard to Plaintiff's claims. Having determined that the deliberate indifference standard applies to Plaintiff's failure to protect claims, this Court must next determine whether Plaintiff has met his burden of alleging constitutional violations in order to overcome the first prong of the qualified immunity defense.

The Plaintiff's allegations are not sufficient to establish liability against the individual Defendants for failing to protect him from harm at the hands of Cage. An inmate has a constitutional right to be protected from violence at the hands of other inmates.[32] However, prison officials will not be liable for every prison fight that occurs; a prison official will only be liable for failing to protect an inmate when the prison official is deliberately indifferent to an inmate's safety.[33] Deliberate indifference requires an allegation of a "conscious or callous indifference" to a prisoner's rights.[34] "The deliberate indifference standard sets a very high bar, and a claim of mere negligence in failing to protect an inmate from harm is not actionable under § 1983." [35]

A plaintiff's "mere assertion" that an offending co-inmate had a history of violence is not sufficient to establish that the officers who placed the offending co-inmate in a certain living area with the plaintiff inmate were deliberately indifferent to the plaintiff inmate's safety.[36] In order to

---

[31] *Alderson v. Concordia Parish Corr. Facility*, Civil Action No. 15-30610, 2017 WL 541006, at *2 n. 4 (5th Cir. Feb. 9, 2017) ("The concurring opinion suggests that our *en banc* court should reconsider *Hare* in light of the Supreme Court's opinion in *Kingsley*…Because the Fifth Circuit has continued to rely on *Hare* and to apply a subjective standard post-*Kingsley*, this panel is bound by our rule of orderliness.").
[32] *Hare,* 74 F.3d at 641.
[33] *Robertson v. LeBlanc*, Civil Action No. 13-171-SDD-RLB, 2014 WL 688979, at *4 (M.D. La. Feb. 20, 2014) (citation omitted).
[34] *Hare*, 74 F.3d at 641 (citation omitted).
[35] *Robertson*, 2014 WL 688979, at *4 (citing *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986)).
[36] *Sanders v. Goodween*, Civil Action No. 12-440-SDD-RLB, 2013 WL 5818610, at *6 (M.D. La. Oct. 29, 2013).

show that prison officials were deliberately indifferent to his safety, a plaintiff must show that those officials were aware that the offending co-inmate posed a specific threat to the plaintiff and that those officials consciously disregarded that known threat.[37]

In *Robertson*[38], the plaintiff was an inmate who alleged that his constitutional rights were violated by prison officials who placed him in a bed next to a dangerous co-inmate who assaulted him.[39] The court held that the plaintiff failed to allege a failure to protect claim.[40] The court stated that prison officials should be accorded deference in their classification and placement of individuals based on their prior histories and their "intervening efforts at rehabilitation."[41] The court held that even if the prison officials were aware that the offending co-inmate had a history of violence, they were not deliberately indifferent in placing plaintiff in a bed next to the offending co-inmate unless the officials were "personally aware of a serious threat of potential harm to the plaintiff from the offending co-inmate."[42] The plaintiff had not advised any of the prison employees of his conflict with the offending co-inmate. Accordingly, the court found that the officials were not deliberately indifferent to the plaintiff's safety.[43]

Turning to the facts of this case, Plaintiff has failed to allege that any of the Defendants, in their individual capacities, violated his constitutional rights. Plaintiff claims that two main groups

---

[37] *Robertson*, 2014 WL 688979, at *5.
[38] The Court is aware of the confusion it might cause by citing a case where the plaintiff was also named Robertson. That case involved a Mr. Larry Robertson. This case involves a Mr. Michael Robertson.
[39] *Robertson*, 2014 WL 688979, at *1.
[40] *Id.* at *5.
[41] *Id.*
[42] *Id. See also Verrette v. Major*, Civil Action No. 07-547, 2011 WL 3269319, at *2 (W.D. La. July 29, 2011) (dismissing an inmate's failure to protect claim and holding that even if the defendant was aware of an inmate's history of violence, "[p]risons are dangerous places housing dangerous people. It is unreasonable to believe persons overseeing the classification of inmates for work assignments and housing can prevent all potential prisoner-on-prisoner violence.").
[43] *Robertson*, 2014 WL 688979, at *5.

of individuals violated his rights—Defendants who released Cage back into the general population, and Defendants who were supposed to be monitoring the day room where he was attacked.

He seeks to hold the first group individually liable because they approved Mr. Cage's release from lockdown to the general population, Tier J2. The Plaintiff claims that Defendants Gautreaux, Grimes, Clement, Harris, Scott, and Deputies John Doe 1-4 are liable to him on this ground. The Plaintiff has failed to allege a constitutional violation by these individuals. Even if these Defendants were generally aware of Cage's aggressive behavior, the Plaintiff has not shown that these Defendants were specifically aware of animosity between Cage and the Plaintiff. His allegation that "Defendants knew or should have known that Percy Cage had expressed animosity towards [him] before the incident," is conclusory.[44] The Plaintiff does not allege that he told any of the prison officials that he had a conflict with Cage, and so this Court is unable to draw the inference that any of these Defendants knew that they were subjecting the Plaintiff to a possible attack when they released Cage from lockdown to Tier J2. At most, the Plaintiff has made out a claim for negligence against these individuals.

The Plaintiff seeks to hold Defendants Locket, Harris, and Griffin, individually liable for failing to protect him from Cage. He claims that they were supposed to be monitoring the day room and would have been able to stop the attack had they been there. However, at most, the Plaintiff has made out a negligence claim against these individuals. He has not alleged facts sufficient for the Court to draw the inference that Locket, Harris, and Griffin were aware of a conflict between the Plaintiff and Cage and that they consciously disregarded the threat that Cage posed to the Plaintiff. His claim against these three individuals would only rise to the level of a constitutional violation if they "simply stood by and permitted an attack to proceed."[45]

---

[44] Compl. ¶ 21, Doc. 1.
[45] *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

Accordingly, he has failed to show that these three individuals were deliberately indifferent to the Plaintiff's safety when they left or failed to monitor the day room where the Plaintiff was attacked.

Additionally, to the extent Plaintiff seeks to hold the Defendants individually liable because they did not prevent "a known aggressor from keeping an object that could be used as a weapon to cause injury,"[46] this Court finds that Plaintiff has failed to make out a constitutional violation. Plaintiff does not allege that any of the Defendants knew Cage's brace was unnecessary or that they knew it would be used as a weapon against other inmates. As noted by the Defendants, Plaintiff does not point to any other instances in which a brace was used as a weapon. Therefore, Defendants were not deliberately indifferent to the Plaintiff's safety in allowing Cage to possess the brace.

Plaintiff has failed to plead sufficient facts to show that any of the Defendants violated his constitutional rights in their personal capacities. Accordingly, he has failed to plead enough facts to satisfy the first prong of his burden to prove that the qualified immunity defense is inapplicable. Based upon this finding, the Court need not address the second prong of whether the Defendants' actions were objectively unreasonable.[47]

However, because this Court has not previously granted Plaintiff leave to amend his complaint, the Court **DENIES** without prejudice Defendants' Motion as it pertains to the individual capacity claims and grants Plaintiff leave to amend his complaint to meet the heightened pleading standard and overcome the qualified immunity defense. Defendants can reurge the qualified immunity defense after an amended complaint is filed.

---

[46] Compl. ¶ 32, Doc. 1.
[47] *Stroman v. Ard*, Civil Action No. 14-649, 2015 WL 6680874, at *8 (M.D. La. Nov. 2, 2015).

10

### B.      Individual Capacity Claims (Failure to Train)

Plaintiff appears to bring a failure to train and supervise claim against Defendants Gautreaux, Grimes, Clement, and Scott.  Plaintiff alleges that these Defendants failed to adequately supervise and train prison officials. He alleges that this inadequate training resulted in prison guards failing to provide adequate protection from violent co-inmates. Defendants move to dismiss these claims, arguing that that the vague allegations in Plaintiff's Complaint are not sufficient to state a failure to train claim. In his Opposition, Plaintiff fails to address Defendants' failure to train arguments. As noted by the Defendants in their Reply, failure to address these claims results in abandonment of these claims.[48] Accordingly, the Court **GRANTS** Defendants' Motion with respect to these claims. The failure to train claims against these Defendants are **DISMISSED**.

### C.      Official Capacity Claims Against Non-Policymakers

The Plaintiff makes claims against Defendants Clement, Scott, Harris, Locket, and Griffin in their official capacities. Defendants move to dismiss claims against these individuals in their official capacities, arguing that they are not final policymakers. Only those possessing final policy making authority represent official policy.[49] In his Opposition, the Plaintiff fails to address Defendants' assertions that the Plaintiff does not have a claim against Clement, Scott, Harris, Locket and Griffin in their official capacities. As noted by the Defendants in their Reply, failure to address these claims in his Opposition results in abandonment of these claims.[50] Accordingly,

---

[48] *Barlow v. Safety Nat'l Casualty Corp.*, Civil Action No. 11-cv-236, 2014 WL 1327922, at *5 n.7 (M.D. La. Mar. 31, 2014) ("[Plaintiff's] failure to address Defendants' argument in her opposition memorandum may be deemed a concession in light of this Court's local rules."); *see also Levy-Tatum v. Navient Solutions, Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) ("This Court has previously treated a plaintiff's failure to address a defendant's arguments for dismissal as abandonment."); *Sportscare of America, P.C. v. Multiplan, Inc.*, Civil Action No. 10-4414, 2011 WL 589955 (D.N.J. Feb. 10, 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").
[49] *Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 737 (1989).
[50] *Supra,* fn. 48.

the Court **GRANTS** Defendants' Motion with respect to these Defendants. The official capacity claims against Defendants Clement, Scott, Harris, Locket, and Griffin are **DISMISSED**.

### D.     Official Capacity Claims Against Policymakers, Gautreaux and Grimes

The Plaintiff brings official capacity claims against Gautreaux and Grimes. The Defendant does not dispute that these two Defendants are final policymakers for municipal liability purposes. A suit against a government official in his official capacity is a suit against the government entity of which the official is an agent.[51] Official capacity suits are just another way of pleading a claim against a municipal entity.[52] In order to hold a local government entity liable under Section 1983, a plaintiff must prove (1) that there is an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) that the plaintiff suffered a violation of his constitutional rights whose "moving force" is the policy or custom.[53]

A plaintiff can satisfy the first element by either pointing to a formal policy or an informal custom that is so common that it constitutes a policy.[54] To prove that there is a formal policy, a plaintiff can show that there is a policy statement, ordinance, regulation, or decision that has been adopted by the municipality's governing body or by an individual who has been delegated policy-making authority.[55] If there is no written policy, a plaintiff can satisfy this first element by showing the existence of a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[56] Evidence of an isolated incident is not sufficient to show that a practice is persistent and widespread so as to establish a custom; a

---

[51] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).
[52] *Id.*
[53] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166-7 (5th Cir. 2010).
[54] *Id.* at 168.
[55] *Id.*
[56] *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

plaintiff must allege "[s]ufficiently numerous prior incidents of [officer] misconduct…[which] may tend to prove custom and accession to that custom by the municipality's policymakers."[57]

The Defendants argue that the Plaintiff merely makes conclusory allegations of practices or customs without alleging any prior incidents to establish a pattern. The Plaintiff argues that he has alleged enough to show that there are customs that are so well settled as to constitute official prison policy. He points to four different "customs" which he argues "had a direct causal link" to his injuries.[58]

Three of the customs, if true, would be grounds for a municipal liability claim. However, the Plaintiff has not put forward enough factual allegations to show that these customs exist. Therefore, he fails to allege enough to satisfy the first prong of the municipal liability test.

First, Plaintiff alleges that there is a policy of permitting known aggressors to be housed with inmates that they have expressly said they do not like.[59] Second, Plaintiff alleges that there is a policy of allowing known aggressors to possess objects which could be used as weapons to assault other inmates.[60] Third, Plaintiff alleges that there is a policy of releasing known aggressors from lockdown into general population tiers without protocol to maintain supervision of these individuals.[61] Plaintiff has failed to allege a municipal liability claim against East Baton Rouge Parish because he has failed to allege sufficient facts to show that these three policies exist. The

---

[57] *Pineda v. City of Houston*, 291 F.3d 325, 330 n. 15 (5th Cir. 2002) (internal quotations and citations omitted); *see also Carter v. Diamond URS Huntsville, LLC*, 175 F.Supp.3d 711, 733 (S.D. Tex. 2016).
[58] Pl.'s Opp. 8, Doc. 23.
[59] Compl. ¶ 22, Doc. 1 ("Defendants Gautreaux, Grimes, Clement, Harris, Scott and the Deputy Doe Defendants are responsible for the policy, custom or usage of the Sheriff's Office and the Parish Prison to permit the housing of inmates with known aggressors who have expressed animosity towards them, as set forth in Paragraphs 20 and 21 above.").
[60] *Id.* at ¶ 31 ("Defendants Gautreaux, Grimes, Clement, Harris, Scott and the Deputy Doe Defendants are responsible for the policy, custom or usage of the Sheriff's Office and the Parish Prison which permits known aggressors to possess objects which could be used as a weapon in an assault against another inmate or a deputy.").
[61] *Id.* at ¶ 18-19 ("Defendants Gautreaux, Grimes, Clement, Harris, Scott and the Deputy Doe Defendants are responsible for the policy, custom or usage of the Sheriff's Office and the Parish Prison to release known aggressors from lockdown into general population tiers, without any protocol to maintain close supervision of the known aggressor.").

13

Plaintiff describes a single incident that occurred to him and, based on that single incident, he makes the conclusory allegation that the parish prison has three different policies which resulted in his injuries. The Plaintiff has failed to support his conclusory allegations with any factual allegations that would allow this Court to infer that these various policies exist.

As to the fourth policy, even if it is true, it cannot form the basis for a constitutional claim against EBRPP. The Plaintiff alleges that the prison has a custom that when an inmate requests protective custody, the inmate is punished by being sent to lockdown (the very same place those who violate rules are sent), and for this reason, inmates who consider themselves to be at risk of harm from another inmate rarely request protective custody.

"Prison officials are not required to guarantee a prisoner's safety under terms and conditions dictated by the prisoner. A prisoner is entitled to adequate protection from harm, but is not entitled to direct prison officials on the means to accomplish it."[62] In *Hall*, the plaintiff inmate expressed concern for her safety because of conflicts she had with three inmates. She sued various prison officials for failing to protect her from the other inmates after one of the three inmates attacked her. The plaintiff claimed that she would have accepted the prison officials' offer of protective custody, but she declined their offers because the conditions of protective custody were too restrictive for her liking. The Court held that she could not make out a failure to protect claim where she refused the protection offered by the prison; the prison had a duty to offer adequate protection from harm, not protection that perfectly suited the inmate's desires.

The Plaintiff cannot base his municipal liability claim on the fact that he did not like the type of protective custody that was available to him. Like the plaintiff in *Hall* who failed to state a failure to protect claim where she refused to accept protective custody, Robertson cannot base

---

[62] *Hall v. Arnold*, Civil Action No. 07-202, 2007 WL 3399745, at *4 (E.D. Ky. Nov. 13, 2007).

his official capacity claim on the fact that he failed to ask for protective custody. A prison satisfies its constitutional obligations when it offers protective custody. It does not need to offer accommodations that satisfy the prisoner's desires.

Although the Plaintiff has failed to state Section 1983 claims against Gautreaux and Grimes in their official capacities, this Court has not previously granted Plaintiff leave to amend his Complaint. Therefore, the Court **DENIES** without prejudice Defendants' Motion as it pertains to the official capacity claims against Gautreaux and Grimes. Plaintiff has twenty-one days to amend his complaint to address the deficiencies noted above.

## IV.   CONCLUSION

For the reasons stated above, the Defendants' Motion to Dismiss (Doc. 13) is **GRANTED** in part and **DENIED** in part.

The Motion is **GRANTED** as to Plaintiff's failure to train claims and certain official capacity claims. Accordingly, Plaintiff's individual capacity failure to train claims against Defendants Gautreaux, Grimes, Clement, and Scott are hereby **DISMISSED**. Plaintiff's official capacity claims against Defendants Clement, Scott, Harris, Locket, and Griffin are hereby **DISMISSED**.

Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's individual capacity failure to protect claims against Defendants Gautreaux, Grimes, Clement, Harris, Scott, Deputies John Doe 1-4, Locket, and Griffin. The Motion to Dismiss is **DENIED** as to Plaintiff's official capacity claims against Gautreaux and Grimes. The Plaintiff has twenty-one days to amend his Complaint to overcome the qualified immunity defense and to plead facts sufficient to make out a municipal liability claim against East Baton Rouge Parish. Defendants may reurge their Motion to Dismiss at that time.

15

Signed in Baton Rouge, Louisiana, on February 21, 2017.

_____

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**